[No. 38664.   Department Two.   February 23, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM N. STARK, *Appellant.**

*Samuel P. Hale*, for appellant.

*Robert E. Schillberg* and *Gerald R. Gates*, for respondent.

PER CURIAM—Appellant was charged by information filed in superior court in Snohomish County with one count of forgery in the first degree. A jury returned a verdict of guilty and appellant was sentenced to a maximum of 20 years in prison, with a recommended minimum of 2 years. Appellant's motion for a new trial was denied.

The state introduced and the trial court admitted in evidence certain handwriting exemplars obtained from appellant while he was in custody in King County on March 8, 1965, and a written confession given by appellant in Everett city jail on April 16, 1965. The admission in evidence of the confession is the basis for appellant's single assignment of error except for the denial of a new trial.

The court conducted a hearing pursuant to Rule of Pleading, Practice and Procedure 101.20W on the admissibility of the confession, and subsequently, after the state had rested its case, permitted appellant to "reopen" the matter for the purpose of giving further testimony with respect to the voluntariness of the confession.

The sequence of events leading up to the giving of the confession was, according to the testimony at both Rule 101.20W hearings, essentially as follows:

*Reported in 424 P.2d 641.

March 8, 1965, Officer Safstrom of the Everett police department interviewed appellant while appellant was in the King County jail. The purpose of the interview was apparently to obtain a statement regarding the check alleged to have been forged by appellant and to obtain handwriting exemplars for comparison with this check. Appellant readily gave the handwriting exemplars but declined, at that time, to give a written statement.

Appellant admits that there were no threats, coercion, or promises made by Officer Safstrom at that time.

Thereafter, on April 5, 1965, Officer Safstrom again interviewed appellant (in the Everett city jail), at which interview appellant made certain oral statements regarding the check, but again declined to give a written statement. He did, however, request an interview with Deputy Prosecutor Gates.

Appellant was then taken to Everett justice court, where the justice of the peace advised him of his rights. It appears that appellant was represented at this hearing by an unnamed attorney.

Deputy Prosecutor Gates, in response to appellant's request, came to see appellant on April 7, 1965. On April 16, 1965, appellant made the written statement in question to Officer Safstrom.

At the first hearing pursuant to Rule 101.20W, appellant's chief contention was that he was not advised of his right to counsel at any time prior to the making of the statement on April 16, 1965. The trial court found to the contrary. We further note that it is undisputed that he was advised of his rights by the justice of the peace on April 5th.

At the second "hearing," however, appellant contended that certain "threats" were made to him by Deputy Prosecutor Gates.

It is admitted that the deputy prosecutor came to see appellant at appellant's request. Appellant asked Mr. Gates if there was any way that he could have the charges against him dismissed or reduced, or if there was anything that he could do to help himself in this matter. Mr. Gates, at this time, told appellant "no." Appellant then testified:

He then asked me if I was going to make a statement and he said that he wasn't going to reduce any charges against me but that he would do this much for me if I would make a statement—he would only prosecute me on one check charge, not on the other seven and he would not prosecute me on the habitual criminal charge.

Appellant further testified that he relied on these "promises," and that he would not have made the confession but for the promises.

Mr. Gates' testimony was that:

The nature of my statement or Mr. Safstrom's, whichever one it may have been or both of us was the same thing and was to the effect that the procedure in the Prosecutor's office or the procedure with the Police Department was to ask that the single charge, if there were a number of violations regarding checks, that if the defendant pleaded guilty to the single charge that the rest of the matters are dropped and, dropped at that time and no other charges are filed.

Mr. Gates stated that he never promised that other charges would be dropped if a statement were given, or that others would be filed if appellant did not make a statement.

As to the mention of an habitual criminal charge, Mr. Gates testified:

Now, again, this is somewhat far removed but I believe there was a mention of the habitual criminal statute during this conversation that we had over there. I am trying to think who might have brought it up; the defendant may have brought it up but there was no indication by me or Officer Safstrom as to that with regard to him giving or not giving a statement, that if he did not that the habitual criminal act would be filed against him and not even if he should not plead guilty—none of these things were mentioned; it may have been mentioned to the effect that because of the fact that he was previously convicted a number of times, there could be filed against him a charge of habitual criminal, I don't recall, possibly the defendant brought it up . . . .

The deputy prosecutor stated that he had never used the possibility of an habitual criminal charge as a threat.

The trial court found that both the exemplars and the written statement were voluntarily given and that no constitutional rights of appellant were violated. We agree.

RCW 10.58.030 provides:

The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony.

We have carefully examined the record in this case. *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964). In so doing, we find nothing which could, even when interpreted in a light most favorable to appellant, have reasonably produced a fear on his part that additional charges would be filed against him if he did not confess, or that, if a confession were given, no other charges would be filed. In fact, no other charges were filed.

The cases cited by appellant[1] are not applicable under the present circumstances.

Examination of the record in this case, in the light of our responsibility, satisfies us that the trial court's findings are amply supported by the evidence. The judgment and sentence of the trial court is affirmed.

---

[1] *State v. Miller,* 61 Wash. 125, 127, 111 Pac. 1053 (1910)— "Under the laws of this state you could be charged with all these burglaries and your sentence would be tacked one on the other. I did tell him that. I suppose that was a sort of an implied threat."

*State v. Harvey,* 145 Wash. 161, 164, 259 Pac. 21 (1927)—"[T]he language used by the officers could have meant but one thing to these boys,—that they would be locked up until they were willing to talk, and that unless they confessed, they would be prosecuted on a series of charges."

*State v. McCullum,* 18 Wash. 394, 51 Pac. 1044 (1897)—Defendant was placed in a dark cell until he confessed.