**FILED**
**OCTOBER 27, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  36591-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN |
| | ) | PART |
| YASIR M. MAJEED, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — After jury findings of guilt, the trial court convicted Yasir Majeed

with the crimes of commercial sexual abuse of a minor and communication with a minor

for immoral purposes.  On appeal, he seeks reversal of both convictions on the ground

that the trial court commented on the evidence.  He seeks reversal of his conviction for

commercial sexual abuse of a minor on the grounds that the information did not charge a

crime and insufficient evidence supported the conviction.  Finally, he seeks reversal of

his conviction for communication with a minor for immoral purposes on the basis that the

to-convict jury instruction allowed a conviction if he communicated with someone other

than the minor victim.  We reverse Majeed's conviction for commercial sexual abuse of a

minor.  We affirm his conviction for communication with a minor for immoral purposes.

FACTS

The prosecution of Yasir Majeed arises from a sting operation aimed at men seeking sex with girls. In July 2017, Sergeant Carlos Rodriguez of the Washington State Patrol Missing and Exploited Children's Task Force posted an advertisement on the website Craigslist in its Casual Encounters section. Sergeant Rodriguez adopted the persona of a 13-year old runaway, Denise Collins. The posting was titled "young looking for older daddy – w4m" and stated:

> I am young looking for older daddy to take care of this young baby girl. Be real. Be nice, your pic gets mine. let's get lit! I have a daddy fetish and love to take showers, very clean. let's talk. DDF.

Br. of Resp't App. A at 3 (grammatical and spelling errors in original). "W4m" means woman looking for a man. "DDF" is shorthand for disease and drug free, and "let's get lit" indicates that the advertiser wants to get high or drink.

Yasir Majeed responded by e-mail to the posting: "Tell me more about you. I'm interested 35 yo clean, nice educated and like to spoil you if we click." *See* Br. of Resp't App. B at 5. During his communications in response to the Craigslist ad, Majeed employed the alias "Jay." Report of Proceedings (RP) at 524. During trial, he explained that he used the name because he did not know to whom he was writing.

The ersatz Denise Collins replied to Yasir Majeed's first e-mail message:

> "I am in need of a daddy. I ran away a while ago cause my mom is a bitch. Just hanging with friends for right now. But just want to have some fun and forgot [sic] about things. If you want to have some fun with me,

2

tell me how and let's chat. I am getting a lot of responses, so get me your phone number and we can talk. If you don't like young fun, then this isn't for you. I'm 13 but I am all woman and fine AF [as f***]."

RP at 370 (grammatical and spelling errors in original).

With Denise Collins' response, Sergeant Carlos Rodriguez attached a photograph. Washington State Patrol (WSP) standard operating procedure disallows use of photos of real children. Sergeant Rodriguez used a photo of Trooper Anna Gasser, who was in her mid-twenties. Law enforcement used a filter, available through the social media application Snapchat, to render Trooper Gasser's appearance younger.

The rest of the e-mail messages progressed as follows:

[Majeed] [pretend Jay]: Do you like to go on road trip? Camping?
[WSP] [pretend Collins]: I do like trips and camping, but right now kind of want to get turnt up and have some playtime daddy what did you have in mind
[Majeed:] I wanna meet and have fun with you as start and see how things going. Let's meet sunday. can you?
And I'll make it worth your time
I wanna meet and have fun with you as start and see how things going. Let's meet sunday. can you?
[WSP:] Like how. can we talk about it in text so its not on CL [Craigslist]. sunday works I don't have any plans LOL [laugh out loud]
[Majeed:] I prefer not to text till we meet I will make it worth your time and will pay you. Will meet and chat about the details
You clean? I need to make sure that you are discreet.
[WSP:] I am for sure babe
[Majeed:] Give me your number so I can text u love
[WSP:] . . . tell me your name and text the word camping so I know its you daddy

3

*See* Br. of Resp't App. B at 5-7 (grammatical and spelling errors in original).  Sergeant Carlos Rodriguez, as Denise Collins, sent Yasir Majeed, as Jay, a phone number at which to continue communicating by text message.  Majeed sent a text to that number stating "Camping . . . Jay."  Br. of Resp't App. C at 9.

Once the conversation moved to texting, Detective Kristl Pohl, also with the WSP task force, continued to communicate as Denise Collins with Majeed.  During these texts, Majeed requested a "sexy pic" and said "I want u in my arms and to have you . . . ."  Br. of Resp't App. C at 9.  Detective Pohl sent Majeed another picture of Trooper Anna Gasser posing as a 13 year-old.

The imaginary Denise Collins told Yasir Majeed, aka Jay, that she resided at a friend's home in Richland, but that her friend would be gone for the weekend.  Majeed asked what he could bring when they met, and the following conversation ensued:

> [WSP:] how long do you want to hang out?
> [Majeed:] Like 30 minutes or so
> [WSP:] that's all daddy?  $100 and bring condoms daddy.  i really like strawberry flavored lube
> [Majeed:] So how old are u again?
> [WSP:] 13 silly daddy
> [Majeed:] How tight you are baby
> [WSP:] i dunno??  Ive only done this once before
> [Majeed:] Mmmm.
> I will get you on Sunday baby girl

*See* Br. of Resp't App. C at 10 (grammatical and spelling errors in original).

4

On the morning of July 8, 2017, Yasir Majeed initiated more texts with Detective Kristl Pohl, still acting as Denise Collins, and asked what she was doing that evening. Detective Pohl responded that she was looking for a date. Majeed replied: "I want u, and [sic] will give u 100[.]" Br. of Resp't App. C at 11. Pohl emphasized that Majeed must bring condoms. The two agreed to meet. Detective Pohl, however, did not yet give an address. She told Majeed that she wanted a picture in order to identify him. Majeed described himself to her, and she told him to go to the Liberty Car Wash, from where they would walk to the residence in the Shoreline Apartments. Pohl also asked Majeed to describe his vehicle, and he wrote that he drove a silver truck.

Yasir Majeed drove ten minutes from his house to the carwash designated by Detective Kristl Pohl. Law enforcement officers positioned themselves near the carwash and the apartment complex. Majeed then drove through the apartment complex parking lot and exited the lot onto the street. Law enforcement stopped Majeed's silver truck on the road. Officers arrested Majeed. He possessed condoms and $100 in his pocket.

Detective Kristl Pohl sent a text message to Yasir Majeed's cellphone after his arrest. Pohl routinely sends a message to a suspect's phone after law enforcement detains the person, and the arresting officer watches the phone to determine if the phone receives a message from Pohl's phone number. One of Majeed's arresting officers noticed a text arrive from Pohl's number on Majeed's mobile phone. Pohl's text linked Majeed to the earlier sexual communications.

5

PROCEDURE

The State of Washington charged Yasir Majeed, by third amended information, with attempted rape of a child in the second degree, commercial sexual abuse of a minor, and communication with a minor for immoral purposes. Count II of the information, which charged commercial sexual abuse of a child, read:

> That the said **YASIR M MAJEED** in the County of Benton, State of Washington, during the time intervening between the 7th day of July, 2017, and the 8th day of July, 2017, in violation of RCW 9.68A.100(1)(b), did pay or agree to pay a fee to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him, to wit: *did agree to pay a person the defendant believed was a thirteen (13) year old* female $100 for sexual conduct, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Washington.

Clerk's Papers (CP) at 15 (emphasis added). Count III of the information, which charged communication with a minor, alleged:

> That the said **YASIR M MAJEED** in the County of Benton, State of Washington, during the time intervening between the 7th day of July, 2017, and the 8th day of July, 2017, in violation of RCW 9.68A.090(2), did communicate with a person the defendant believed was thirteen year old "Denise," a minor, for immoral purposes, to wit: email and text message regarding sexual intercourse, and that communication was through the sending of an electronic communication, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Washington.

CP at 16. Yasir Majeed did not challenge the sufficiency of the information before the trial court.

6

During jury selection, the State inquired about attitudes toward law enforcement acting in an undercover capacity and attitudes toward proactive rather than reactive action on the part of officers. One juror stated that he approved of law officers engaging in proactive actions provided the officers were acting within the law.

At trial, Sergeant Carlos Rodriguez testified regarding exchanged emails, and Detective Kristl Pohl testified regarding text messages. During trial, Yasir Majeed testified that he believed "Denise" was an adult role playing as a minor. He argued that the fictitious Denise used words and described items related to sex that demonstrated knowledge of an adult. He testified that he took on the role of a "sugar daddy" as part of the act but did not intend to pay for sex. RP at 522. He also asserted that he went to the apartment complex out of curiosity and claimed that, had a 13-year old met him, he would have called police.

The trial court instructed the jury using the following instructions without objection from either party:

INSTRUCTION NO. 1

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

CP at 18-19.

INSTRUCTION NO. 12

A person commits the crime of commercial sexual abuse of a minor when he pays or agrees to pay a fee to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him.

CP at 30.

INSTRUCTION NO. 14:

"Minor" means any person under eighteen years of age.

CP at 32.

INSTRUCTION NO. 15

To convict the defendant of the crime of commercial sexual abuse of a minor, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about July 7-8, 2017, the defendant agreed to pay a fee to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him; and
(2) That this act occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.

CP at 33.

INSTRUCTION NO. 16

A person commits the crime of communication with a minor for immoral purposes when he communicates with someone the person believes to be a minor for immoral purposes of a sexual nature.
Communication may be by words or conduct.

CP at 34.

INSTRUCTION NO. 17.

To convict the defendant of the crime of communicating with a minor for immoral purposes, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about July 7-8, 2017, the defendant communicated with another person for immoral purposes of a sexual nature;

(2) That the defendant believed the other person was a minor;

(3) The defendant sent another person an electronic communication for immoral purposes; and

(4) That this act occurred in the State of Washington;

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.

CP at 35.

INSTRUCTION NO. 18.

You have heard testimony from undercover officers who were involved in the government's investigation in this case. Law enforcement officials may engage in stealth and deception, such as the use of undercover agents, in order to investigate criminal activities. Undercover agents may use false names and identities.

CP at 36.

The jury found Yasir Majeed guilty of commercial sexual abuse of a minor and communication of a minor for an immoral purpose, but could not reach a verdict on the charge of attempted rape of a child. The trial court declared a mistrial on the attempted rape charge, and the State later dismissed the charge.

9

LAW AND ANALYSIS

On appeal, Yasir Majeed challenges the adequacy of the information and the sufficiency of evidence as to the charge of commercial sexual abuse of a minor found in count II. He challenges the jury instruction on the charge of communication with a minor for immoral purposes as conflicting with law. He challenges both convictions based on the contention that the trial court commented on the evidence when instructing the jury. We address, in the published portion of our opinion, only the challenge to the sufficiency of the information and the adequacy of the charge of commercial sexual abuse of a minor.

Sufficiency of Information - Commercial Sexual Abuse of a Minor

Yasir Majeed contends the facts alleged in count II of the information do not fit the statutory elements of the crime of commercial sexual abuse of a minor, found in RCW 9.68A.100(1)(b), because the information does not expressly state that he agreed to pay for sexual relations with a minor. Instead, the information reads that Majeed agreed to pay for sex with someone "he believed" to be a minor. Majeed's contention does not follow the typical challenge to an information based on the charging instrument allegedly inadequately describing the crime and thereby failing to give adequate notice. Majeed instead echoes the argument found in civil law that the State failed to state a claim for which relief can be granted.

We decline to address Yasir Majeed's argument of a deficient information because, if we agreed with Majeed, we would dismiss the information without prejudice,

10

and the State could refile the charges with changed language.  *State v. Johnson*, 180

Wn.2d 295, 300-01, 325 P.3d 135 (2014).  Majeed benefits instead by this court's

dismissal of the charges with prejudice resulting from insufficient evidence to convict.

Sufficiency of Evidence - Commercial Sexual Abuse of Minor

Yasir Majeed next maintains that the charging statute, RCW 9.68A.100(1)(b),

requires the State, in count II, to prove that he offered payment for sexual relations with a

corporeal minor and the State only submitted evidence that he offered payment for

contact with an invented minor.  Thus, he requests that this court dismiss count II for

insufficient evidence.  The State responds that RCW 9.68A.100 does not expressly

demand that an actual minor be involved.  Stated differently, according to the State, the

statute permits a conviction if Majeed agreed to pay a law enforcement officer acting as a

thirteen-year-old minor.  We agree with Majeed.

At the time of Yasir Majeed's conduct, RCW 9.68A.100(1)(b) declared:

> (1) A person is guilty of commercial sexual abuse of *a minor* if:
> . . . .
> (b) He or she pays or agrees to pay a fee to a minor or a third person pursuant to an understanding that in return therefore *such minor* will engage in sexual conduct with him or her.

(Emphasis added.)  The statute now substitutes "provides anything of value" for "pay a

fee."  We must determine if the word "minor" and the phrase "such minor" denote an

authentic, rather than chimerical, person.  Based on the definitions of "minor" and

"person" found in criminal statutes, based on a comparison of RCW 9.68A.100 with

11

another statute, and based on foreign related decisions, we conclude "minor" within

RCW 9.68A.100 means a real person.

We first find assistance in construing "minor" in RCW 9.68A.100 by reviewing

definitions found in surrounding statutes. Chapter 9.68A RCW "Sexual Exploitation of

Children" defines "minor" as:

> any *person* under eighteen years of age.

RCW 9.68A.011(5) (emphasis added). Definitions provided under Chapter 9.68A RCW

apply throughout the chapter "[u]nless the context clearly indicates otherwise."

RCW 9.68A.011. In turn, Washington's criminal code defines "person" as

> any *natural person* and, where relevant, a corporation, joint stock
> association, or an unincorporated association.

RCW 9A.04.110(17) (emphasis added). A "natural person" excludes imaginary,

artificial, or fictitious persons. *State v. Washington*, 168 N.H. 689, 136 A.3d 916, 918

(2016); *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558, 562 (2015).

We next compare RCW 9.68A.100 with another criminal statute. In 2003, the

legislature amended RCW 9.68A.090, "Communication with minor for immoral

purposes" which now reads in part:

> (1) Except as provided in subsection (2) of this section, a person who
> communicates with a minor for immoral purposes, or a person who
> communicates with *someone the person believes to be a minor* for immoral
> purposes, is guilty of a gross misdemeanor.

12

RCW 9.68A.090; LAW OF 2003, ch. 26, § 1 (emphasis added). Based on this second statute, we reason that the Washington State legislature knows when it wishes to impose criminal liability for a person's actions aimed toward sex with a minor, despite the minor being imaginary and created by law enforcement. The legislature, as it did in RCW 9.68A.090, knows when it wishes to use the phrase "someone the person believes to be a minor." RCW 9.68A.100 omits "believes to be a minor" and only references a "minor" and "such minor."

We also note that RCW 9A.28.020(2), which governs attempts to commit a crime, declares:

> If the conduct in which a person engages otherwise constitutes an attempt to commit a crime, it is no defense to a prosecution of such attempt that the crime charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission.

The State may have been better served by charging Yasir Majeed with attempt to commit commercial sexual abuse of a minor, rather than the completed crime.

The State underscores that the second employment of the word "minor" in RCW 9.68A.100 is accompanied with the determiner "such." In turn, the State contends that "such minor" could refer to some implied or undefined minor, which would include a pretend person. The State argues that legislative findings stated in RCW 9.68A.001 reinforce this position, including its finding that:

> [P]revention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a

13

> sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children.
>     . . . .
>         The legislature further finds that children engaged in sexual conduct for financial compensation are frequently the victims of sexual abuse. . . . It is the intent of the legislature to . . . hold those who pay to engage in the sexual abuse of children accountable for the trauma they inflict on children.

The State also distinguishes the point at which the crime of commercial sexual abuse of a minor is committed as compared to other crimes. For instance, rape of a child requires that a "person *has sexual intercourse with another*." RCW 9A.44.073, .076, .079 (emphasis added). The crime of possessions of depictions of minor engaged in sexually explicit conduct requires a person to "knowingly possesses a visual or printed matter *depicting a minor* engaged in sexually explicit conduct." RCW 9.68A.070(1)(a) (emphasis added). These crimes require an actual child in order to be violated. By contrast, the State argues that the crime of commercial sexual abuse of a child, under RCW 9.68A.100(1)(b), is completed on the formation of an agreement to pay for sex.

We concur in the State's condemnation of sexual relations by an adult with a minor, regardless of whether the conduct is part of a commercial transaction, as a vile act. The State holds a compelling interest to preclude the sexual abuse of a minor. Nevertheless, based on the legislative definition of a "minor," regardless of whether we add the determiner "such," a minor must be an existent human being.

Finally, we survey foreign decisions, wherein the courts addressed a criminal statute that protected a "minor" or a "person." The prevailing, if not universal, view is

14

that a person, whether or not a minor person, does not include a fictitious person. *United States v. Vasquez*, 839 F.3d 409, 411-13 (5th Cir. 2016); *United States v. Fulford*, 662 F.3d 1174, 1181 (11th Cir. 2011); *United States v. Kahn*, 524 F. Supp. 2d 1278, 1282-83 (W.D. Wash. 2007); *State v. Washington*, 136 A.3d 916, 916-19 (N. H. 2016); *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558, 562 (2015).

A United States Sentencing Commission guideline recommends an increase in a sentence for the crime of enticing and coercing an individual to engage in unlawful sexual activity, under 18 U.S.C. § 2422(a), when the crime involves a minor under the age of twelve-years-old. In *United States v. Vasquez*, 839 F.3d at 411-13, the court ruled that the term "minor" did not include a fictitious infant, but required a "sure enough" individual. In a losing argument, the government contended that Congress intended to punish the intent to offer a minor to engage in sex.

Another United States Sentencing Commission guideline recommends an increase in a sentence for the crime of distribution of child pornography if the accused distributed the pornography to a minor in violation of 18 U.S.C. § 2252A(a)(2). In *United States v. Fulford*, 662 F.3d at 1175 (11th Cir. 2011), the intermediate level court held that the guideline did not cover distribution to a fictitious minor that the defendant believed to be a minor. The court recognized that the government's position might be the better outcome, but that the court could not rewrite the guideline.

In *State v. Washington*, 136 A.3d 916 (N. H. 2016), the state high court affirmed the trial court's dismissal of the charge of identity fraud. A New Hampshire criminal statute prohibited posing as "another person" in order to defraud. The court held that "person" denoted an actual, rather than a fictitious, person. The accused had fabricated the personage of Eli Watts. The New Hampshire statutory definition of "person" echoed the state of Washington's definition. New Hampshire defined "person" to "include any natural person and, a corporation or an unincorporated association." N.H. REV. STAT. ANN. 625:11(II). The prosecution lost the argument that the word "include" suggested a broad interpretation of the word "person" that could include someone other than a natural person.

In *State v. Covey*, 859 N.W.2d 558 (Neb. 2015), the Nebraska court ruled that one did not commit the crime of criminal impersonation of a person when one employed a false name that did not correspond to any real individual. The Nebraska criminal code defined "person" as "any *natural person* and where relevant a corporation or an unincorporated association." NEB. REV. STAT. § 28-109(17) (emphasis added). The court observed that Black's Law Dictionary defined a "natural person" as "'[a] human being, as distinguished from an artificial person created by law.'" *State v. Covey*, 290 Neb. at 262 (alteration in original) (quoting BLACKS LAW DICTIONARY 1162 (7th ed. 1999)). Thus, a "natural person" excluded imaginary, artificial, or fictitious persons. If

the legislature wished to extend the criminal statute to impersonating an ersatz person, the legislature could have so expressly stated.

The State of Washington failed to present evidence that Denise Collins was a genuine minor. The undisputed evidence is that Denise was a fictitious being. Therefore, the State did not present evidence to show that Yasir Majeed offered to pay for sex with a minor within the confines of RCW 9.68A.100. If insufficient evidence supports the elements of a crime, we must reverse the conviction. *State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998). We must also dismiss the charges with prejudice. Retrial after a finding of insufficient evidence would violate the Fifth Amendment's double jeopardy clause against a subsequent prosecution for the same offense. *State v. Hardesty*, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996). Thus, we dismiss with prejudice the charge against Yasir Majeed for commercial sexual abuse of a minor.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

## Comment on the Evidence

Yasir Majeed contends that jury instruction number 18 was an unconstitutional judicial comment on the evidence. Based on this assignment of error, he requests that we reverse both convictions and remand for a new trial. We have already dismissed the one

17

conviction and dismissed it with prejudice, so the argument now applies only to the

conviction for communication with a minor. To repeat, the instruction read:

> You have heard testimony from undercover officers who were
> involved in the government's investigation in this case. Law enforcement
> *officials may engage in stealth and deception*, such as the use of undercover
> agents, in order to investigate *criminal activities*. Undercover agents may
> use false names and identities.

CP at 36 (emphasis added).

Yasir Majeed asserts that, for two reasons, jury instruction 18, commented on the

evidence. First, he complains that the jury instruction vouched for the credibility of the

WSP troopers and suggested to a juror that he or she should believe the trooper when the

trooper's testimony contradicts the testimony of Majeed. Second, Majeed complains that

the instruction assumed that Yasir Majeed engaged in criminal activity. We analyze each

contention separately.

We agree with the State that jury instruction 18 did not vouch for the credibility of

the testifying law enforcement officers, particularly in regard to their trial testimony. The

instruction instead was a correct statement of law that, under some circumstances,

officers may lie in the course of investigative conduct. *State v. Smith*, 101 Wn.2d 36, 43,

677 P.2d 100 (1984).

Yasir Majeed also worries about a juror deflating his credibility as a result of his

using a fictitious name when communicating on the Internet. Unlike the jury instruction

condoning deception by law enforcement officers, no instruction mentioned the legality

of the use of an alias on e-mail or in texting by a private citizen.

We do not share in Yasir Majeed's worry. Jurors understand the use of assumed names when engaging in electronic communications. Majeed did not object to the jury instruction at trial, at a time when he could have asked for some modification in the instruction to allay his fears. His trial counsel could have mentioned in summation the phenomenon of the use of aliases when communicating. Nothing in the instruction suggested that the jury should deem Yasir Majeed's testimony untrustworthy.

We also agree with the State that jury instruction 18 did not tell the jury that Yasir Majeed engaged in criminal activity. The instruction did not single out the investigation of Majeed. Instead, the instruction spoke in generalities. More importantly, instruction 18 did not suggest that all criminal investigations lead to the discovery of a crime. The undisputed facts established that Washington State Patrol troopers were engaged, at the time of the relevant facts, in investigating criminal activities.

Article IV, section 16 of the Washington State Constitution provides:

> Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

Pursuant to this constitutional provision, if the trial judge conveys to the jury his or her personal opinion regarding the truth or falsity of any evidence introduced at trial, the judge has violated the constitutional mandate. *State v. Bogner*, 62 Wn.2d 247, 250, 382 P.2d 254 (1963). The trial court violates this prohibition regardless of whether the court

expressly conveys his or her personal feelings on an element of the offense, as long as the court impliedly conveys that feeling. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Nevertheless, assumption of a peripheral fact not disputed is not constitutionally prohibited. *State v. Hansen*, 46 Wn. App. 292, 300, 730 P.2d 706 (1986), *amended*, 737 P.2d 670 (1987).

With regard to jury instruction 18's reference to a criminal investigation, Yasir Majeed compares the instruction to one given in *State v. Baun*, 123 Wash. 340, 212 P. 553 (1923). There, the trial court instructed the jury as follows:

> If you are convinced beyond a reasonable doubt that any of the defendants in this case aided *or* abetted in the commission of *the crime*, whether present or absent, or of [sic] you are convinced beyond a reasonable doubt that any of the defendants in this case, directly or indirectly, counseled, encouraged, hired, commanded, induced, or otherwise procured any other of the defendants herein to commit *the crime*, you should find any such defendants guilty as charged.

*State v. Baun*, 123 Wash. at 344. In *Baun*, the high court held that the instruction was erroneous as the appealing defendants denied their involvement in a crime. The court held that the trial court assumed a material fact instead of leaving the issue of whether a crime was committed to the jury.

We distinguish *State v. Baun* in that the jury instruction used the definite article "the" when referencing the crime. The instruction suggested that the judge considered the charge to constitute a "crime."

20

Yasir Majeed cites a number of cases, in which the accused complained about the trial court's commenting on the evidence. On review, the comments were held to be unconstitutional.

In *State v. Jackson*, 83 Wash. 514, 520-23, 145 P. 470 (1915), the trial court interrupted the prosecuting attorney during cross-examination and cross-examined the witness. The Washington Supreme Court determined that the extensive questioning expressed doubt as to the credibility of a material witness. Yasir Majeed's trial judge did not question any witnesses.

Our high court determined that a statement by the trial court that a witness would be discharged provided he testify "fully as to all material matters within his knowledge" constituted a comment on the evidence and bolstered the witness's credibility when, thereafter, the trial court informed the jury of the witness's discharge. *State v. James*, 63 Wn.2d 71, 76, 385 P.2d 558 (1963). Yasir Majeed's trial court did not reference any testimony by a witness.

In *State v. Yanai*, 128 Wash. 568, 224 P. 15 (1924), the trial court excluded witnesses from the courtroom. One witness, however, remained in the open doorway in the crowd that attended the trial while other witnesses testified. The witness testified that he could not hear anything. Our high court held that the trial court vouched for the witness's credibility when it stated: "We can all take notice, in a practical way, that a witness standing outside of the door there could not have possibly heard any witness

21

testifying here on the stand. I don't believe he could have heard it." *State v. Yanai*, 128 Wash. at 569. To repeat, Yasir Majeed's trial judge did not remark about the testimony of any witness.

Finally, in *State v. Bogner*, 62 Wn.2d 247 (1963) the defense attorney and court engaged in an extended discussion, after which the trial court retorted in the presence of the jury: "Don't you think we are getting a little ridiculous, or aren't we?" *State v. Bogner*, 62 Wn.2d at 249. Our state Supreme Court determined this was a comment on the evidence. Yasir Majeed's trial court did not criticize the presentation by defense counsel.

Communication with a Minor for Immoral Purposes

Yasir Majeed contends that jury instruction 17, the to-convict instruction for the crime of communication with a minor for immoral purposes, alleged in count III, relieved the State of its duty to prove that he communicated with "Denise," the fictitious victim, by electronic communication. To repeat, jury instruction 17 required that the State prove:

> (1) That on or about July 7-8, 2017, the defendant communicated with another person for immoral purposes of a sexual nature;
> (2) That the defendant believed the other person was a minor,
> (3) The defendant sent *another person* an electronic communication for immoral purposes; and
> (4) That this act occurred in the State of Washington.

CP at 35 (emphasis added).

According to Yasir Majeed, the governing criminal statute, RCW 9.68A.090(2), requires that the communication be to the person the defendant believes to be a minor, but paragraph 3 of jury instruction 17 allows a conviction regardless of whether the accused sent the communication to the supposed minor or to some third person. Yasir Majeed adds that "another" is not a definite term. *State v. Graham*, 153 Wn.2d 400, 406 n.2, 103 P.3d 1238 (2005). According to Majeed, by using the word "another," the jury instruction expanded the range of possible persons beyond what the statute narrowly requires for the crime. Therefore, the instruction did not limit the jury's verdict to the essential elements of the crime. Majeed highlights that jury instruction 17 failed to follow Washington Pattern Jury Instructions. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 47.06 (4th ed. 2016) advises that the name of the person to whom the defendant sent the communication be given.

The State observes that both paragraphs 1 and 3 of jury instruction 17 reference "another person," such that the "another person" is the same real or imagined person. The statute's use of "other person" in paragraph 2 also refers, in this prosecution, to the persona assumed by police. The State also contends that the only evidence of electronic communications at trial were those between Yasir Majeed and "Denise," such that the State could not have convicted Majeed based on communications to a third party.

The State must prove every essential element of a crime beyond a reasonable doubt. *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). An assertion that a "to

23

convict" jury instruction fails to convey every element of the crime implicates manifest constitutional error. *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005). A "to convict" instruction must contain all of the elements of the crime because the instruction serves as a "yardstick," by which the jury measures the evidence to determine guilt or innocence. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). In turn, the trial court commits reversible error when instructing the jury in a manner that would relieve the State of this burden. *State v. Byrd*, 125 Wn.2d at 714. If the jury "must guess at the meaning of an essential element of a crime or if the jury might assume that an essential element need not be proved" the defendant does not receive a fair trial. *State v. Smith*, 131 Wn.2d at 263. Absence of an essential element of a crime in a to-convict instruction violates due process and is harmless only if the reviewing court is convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error. *State v. Linehan*, 147 Wn.2d 638, 654, 56 P.3d 542 (2002); *State v. Van Tuyl*, 132 Wn. App. 750, 758, 133 P.3d 955 (2006).

We agree with Yasir Majeed that jury instruction 17 created confusion as to whether the State needed to prove that Denise was the "another person" to whom he sent the e-mail and texts or whether the State could convict Majeed for sending the text to any other person. The jury instruction detached "electronic communication" from the minor or person the defendant believed to be a minor.

24

Notwithstanding our agreement with Yasir Majeed, we affirm the conviction based on the doctrine of harmless error. Any jury would have reached the same verdict absent the error. The only evidence of electronic communications was from Majeed to Denise, a person he believed to be a minor.

CONCLUSION

We reverse Yasir Majeed's conviction for commercial sexual abuse of a minor and order dismissal of the charge. We affirm Majeed's conviction for communication with a minor for immoral purposes.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Siddoway, J.